Pedram Esfandiary (SBN: 312569)
pesfandiary@baumhedlundlaw.com
Monique Alarcon, Esq. (SBN: 311650)
malarcon@baumhedlundlaw.com
Timothy A. Loranger, Esq. (SBN: 225422)
tloranger@baumhedlundlaw.com
**BAUM HEDLUND ARISTEI
GOLDMAN, P.C.**
10940 Wilshire Blvd., 17th Floor
Los Angeles, CA 90024
Telephone: (310) 207-3233
Facsimile: (310) 820-7444

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMAR WEST,<br><br>        Plaintiff<br><br>    v.<br><br>CHRISTINA SHEA, Mayor of Irvine,<br><br><br>        Defendant | **CIVIL RIGHTS COMPLAINT**<br><br>42 U.S.C. § 1983: FIRST AMENDMENT;<br>CAL. CONST. ARTICLE I, § 2;<br>DECLARATORY & INJUNCTIVE RELIEF |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................ i

**INTRODUCTION**.................................................................................................**1**

**JURISDICTION AND VENUE** ...........................................................................**3**

**PARTIES** ..............................................................................................................**3**

    I.      Plaintiff .....................................................................................................3

    II.    Defendant .................................................................................................3

**FACTS** ..................................................................................................................**3**

    I.      Facebook .................................................................................................3

    II.    Mayor Shea's Facebook Page and Profiles........................................5

    III.   Plaintiff's Criticism of the Mayor and the Mayor's Banning of Plaintiff....................11

**FIRST CAUSE OF ACTION**...............................................................................**17**

**Violation of the First Amendment, 42 U.S.C. § 1983, and Cal. Const. Article 1, Section 2(a)** ...**17**

**(Censorship in a Public Forum)**.........................................................................**17**

**SECOND CAUSE OF ACTION**...........................................................................**17**

**(Violation of the First Amendment, 42 U.S.C. § 1983, and Cal. Const. Article 1, Section 2(a))**..**17**

**(Viewpoint Discrimination)**................................................................................**17**

**THIRD CAUSE OF ACTION** .............................................................................**18**

**(Declaratory & Injunctive Relief)**.....................................................................**18**

**REQUEST FOR RELIEF** ....................................................................................**18**

CIVIL RIGHTS COMPLAINT

**INTRODUCTION**

1.      This case concerns an individual's right to criticize a public official in an online public forum without being censored or discriminated against based on the content of his speech.  Plaintiff, Mr. Lamar West, is a resident of Irvine, California that criticized the views and actions of his elected official, Irvine Mayor Christina Shea within the public forum of the social media site Facebook.  Specifically, plaintiff challenged the mayor's official position on the recent nationwide protests against police oppression of communities of color.  In response, Mayor Shea "blocked" plaintiff from her Facebook profile, thereby precluding plaintiff from participating in the Mayor's discussions with constituents and from being able to view "posts" by the Mayor and the public's response to them.  In so doing, Mayor Shea censored Plaintiff's voice during a critical time of public debate in the country regarding systematic racism and police violence against Black people.

2.      The internet is among the most important places for the exchange of views, enabling a person "to become a town crier with a voice that resonates farther than it could from any soapbox."  *Reno v. American Civil Liberties Union*, 117 S. Ct. 2329, 2344 (1997).  As the Supreme Court recently recognized, social media platforms like Facebook are the "vast democratic forums of the Internet"—modern public squares where Americans can debate politics, religion, and other social issues, and provide "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard." *Id*. at 2343; *Packingham v. North Carolina*, 137 S. Ct. 1730, 1743 (2017).  These platforms have been "revolutionary" not least because they have transformed civic engagement by allowing elected officials to communicate instantaneously and directly with their constituents.  Platforms such as Facebook enable ordinary citizens to speak directly to public officials and to listen to and debate others about public issues, in much the same way they could if they were gathered on a sidewalk or in a public park, or at a city council meeting or town hall.

CIVIL RIGHTS COMPLAINT

3.      Because of the way the mayor, a public official, uses her Facebook account, the account is a public forum under the First Amendment.  Defendant has made the account accessible to all, taking advantage of Facebook's interactive platform to directly engage her constituents.  The mayor's posts routinely generate dozens of comments in the vibrant discussion forum associated with her account. Defendant has used the account to make formal announcements, state the mayor's official position on social and political controversies, update users on mayoral activities, and other matters.  Facebook users are entitled, unless prevented by Mayor Shea, to comment on these posts or those of other speakers.  Any member of the public with an account is thus able to review and consider the viewpoints—often competing—expressed on the mayor's profile.  Under governing law, Mayor Shea's Facebook profile thus qualifies as a public forum under the First Amendment and the California constitution

4.      Because of their criticism of the mayor's tenure and position on recent social events, plaintiff and a host of other individuals have been prevented or impeded from viewing the mayor's profile, from replying to her posts, from viewing the discussions associated with the posts, and from participating in those discussions. Accordingly, defendant's actions violated plaintiff's First Amendment right to express dissent in response to the mayor's policies and to view and interact with the comments of others that have similarly expressed such dissent.

5.      Plaintiff respectfully requests that the Court enter judgment declaring that defendant's exclusion of plaintiff from the profile violates the First Amendment of the U.S. Constitution and Article 1, Section 2(a) of the California Constitution, enjoining defendant from engaging in unlawful censorship of comments, mandating that defendant restore plaintiff's posting privileges, and awarding plaintiff damages, attorneys' fees and costs.

CIVIL RIGHTS COMPLAINT

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over plaintiff's federal constitutional claims under 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. §§ 1983 and 1988, because they arise under the Constitution and laws of the United States.

7.      This court has subject matter jurisdiction over plaintiff's California state constitutional claims under 28 U.S.C. § 1367, because they substantially relate, both legally and factually, to the federal constitutional claims upon which original jurisdiction is premised.

8.      This court has jurisdiction to grant declaratory and injunctive relief pursuant to 28 U.S.C. § 2201-02 and 42 U.S.C. § 1983.

9.      Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because defendant resides within this district and the events and omissions giving rise to plaintiff's claims occurred within this district.

## PARTIES

### I.      Plaintiff

10.     Plaintiff **Lamar West** ("plaintiff") is a software engineer and Irvine constituent.  Plaintiff is, and at all times material hereto was, a resident of Orange County.

### II.      Defendant

11.     Defendant **Christina Shea** ("defendant", the "mayor" or "Mayor Shea") is the Mayor of the City of Irvine, California.  At all times material hereto, defendant acted under color of state law, in her capacity as Mayor of the City of Irvine. Defendant is, and at all times material hereto was, a resident of Orange County. Defendant is sued in her individual capacity as the Mayor of Irvine.

## FACTS

### I.      Facebook

12.     Facebook is a social media platform with more than 2.6 billion active users worldwide including some 223 million users within the United States.  The site

CIVIL RIGHTS COMPLAINT

allows users to upload content—including text, news articles, photos, and video.  It also permits other users to respond to, comment on and interact with others in relation to such content.

13.   **Profile**.  A profile is the home page of a Facebook account typically used by private individuals.  It is "a place on Facebook where you can share information about yourself, such as your interests, photos, videos, current city and hometown."[1] Individuals operating a profile may elect to keep all, some, or none of its features private and can select specific populations – such as friends, family, anyone with a Facebook account or even those without an account – to view the page and its contents.

14.   **Page**.  In contrast to a "profile," a Facebook "page" is a way for "[b]usinesses, organizations and public figures" to "connect with their customers or fans."[2]  However, it is common—as in the matter at bar—for a public figure to operate a profile and a page contemporaneously and to use both to connect with the broader public.

15.   **Posts.**  The content that a Facebook user shares with friends, followers or the public is called a "post."  Posts can be made by the owner of a profile or page, or by other users who visit a profile or page.

16.   **Replying or commenting**.  Facebook users can respond to or comment on posts, unless not permitted to do so.  This is called "replying" or "commenting." Replies appear immediately under the post to which they respond, thereby reflecting the interaction of ideas or viewpoints that the Facebook page or profile is intended to foster.

17.   **Sharing.**  Facebook users can "share" another user's post when authorized, thereby publishing the post on such user's own profile or page.

---

[1] *See* Facebook, What's the difference between a profile, Page, and a group?, available at https://www.facebook.com/help/337881706729661?helpref=faq_content.
[2] *See* Facebook, *About: Pages*, available at https://www.facebook.com/help/282489752085908?helpref=faq_content.

18.    **Banning and deleting.**  An owner of a Facebook profile or page controls its content.  They may delete posts made by other users and may "block" a user from posting on the profile or page.  Relevant to the instant matter, a user blocked from a profile is prevented from viewing, commenting, posting, or otherwise contributing to the profile, and is thereby excluded from participation in the online dialogue or debate.

## II.    Mayor Shea's Facebook Page and Profiles

19.    Mayor Shea maintains two Facebook "profiles", both under the name "Christina Shea", as well as a Facebook "page" titled "Christina Shea, Irvine City Mayor."  For purposes of this Complaint, the First Amendment violations alleged herein occurred on Mayor Shea's most active and popular "Personal Profile" (referred to herein as "Personal Profile" or "Profile").  Mayor Shea's second and less active profile is referred to herein as Mayor Shea's "Official Profile."

CIVIL RIGHTS COMPLAINT

20.    Mayor Shea operates her profiles and page as public fora and a means for direct communication with constituents regarding official mayoral business.  Indeed, the mayor's Personal Profile appears to be *more* public than her page, boasting 1,750 followers and almost 5,000 friends compared to the page's 431 followers and her Official Profile with only 21 friends.



21.     Since its inception, Mayor Shea has used her Profile—which is viewable by the public without the need to befriend or follow the mayor on Facebook—to disseminate information regarding mayoral and city council activities, share the mayor's official position on social and political issues, and communicate with constituents regarding a host of topics ranging from Irvine public safety to the inauguration of new parks and buildings—all with greater frequency than her page.[3] For example, on January 15, 2020, the Mayor posted an announcement on her Profile informing the public that she "coauthored an ordinance with Councilmember Farrah Kahn to ban flavored tobacco vaping products targeted to minors. It was passed unanimously."  The post was liked by 32 people, received 5 comments from constituents, and was "shared" 3 times.  A day later, the mayor posted another update



_____

[3] Indeed, between April 29 and June 4, the mayor did not upload a single post on her page, whereas, during the same time period, the mayor posted repeatedly regarding issues in her mayoral capacity on her Personal Profile.

CIVIL RIGHTS COMPLAINT

from council meetings, stating: "we also approved the Wild Rivers Water Park to be built in the Great Park."  This post was liked by 74 people and received 12 comments from constituents. [4]

22.     Moreover, the mayor's frequent broadcasts of official business on her Profile are regularly accompanied by photographs.  As illustrated below, on March 3, 2020, the mayor posted a picture featuring herself in a meeting with officials from the Transportation Corridor Agency ("TCA") and the caption: "Planning the 241/91 extension for our Toll Road customers. Working on engineering plans with TCA staff…"   Earlier, in December 2019, the mayor had shared several photographs of herself posing with other TCA officials on the site of a bridge construction project.

 

---

[4] The screenshots depicted and referenced throughout this Complaint were obtained directly from the mayor's Profile using an account that is neither a "friend" or "follower" of the mayor on Facebook, underscoring the fact that the Profile is open for viewing and comment by any user—except those the mayor has blocked.

This post was liked by 39 people, received 6 comments from the public, and was reshared once.

23.    Two months after assuming office, the mayor informed the public through her Profile that she had "officiated over the Dedication of our newest community park at Los Olivos [sic], the southern most [sic] area of Irvine. We have created a wonderful center with an interactive youth playground. See Councilmember Anthony Kuo enjoying the new disabilities swing in the playground." The announcement was well-received by constituents—one of whom thanked the mayor and councilmember Kuo for their "outstanding service" by responding directly to the post. The mayor also interacted with her constituents by replying to some of their comments.



24.    Other examples of the mayor opening up her Profile to public discourse include photographs of the mayor—when she was still serving as a councilmember—receiving constituents at City Hall, live updates from local governmental and agency meetings, and information regarding the mayor's swearing-in ceremony (which was

liked by 194 people, received 85 comments and re-shared 24 times), as illustrated by the below screenshots from the mayor's Profile.



CIVIL RIGHTS COMPLAINT

25.     Like other public figures that use their profiles for communicating with the broader populace, Mayor Shea's Profile is interactive.  It provides a platform for constituents to voice their approval of the mayor's and City Council's policies and practices—and purportedly their critiques—along with an opportunity for Mayor Shea to respond.  For all intents and purposes, the mayor's Facebook Profile is a public forum—hosted by a government official—subject to the First Amendment.

**III.    Plaintiff's Criticism of the Mayor and the Mayor's Banning of Plaintiff**

26.     The recent brutal murders of George Floyd, Breonna Taylor and Ahmaud Arbery—the most current culmination of historical police oppression of the Black community—brought the United States to a crossroads.  The tragic fact is that these three individuals were not the first to have their lives taken by a militarized police force and, as recent as their deaths are, have not been the last.[5]

---

[5] In the midst of the ongoing demonstrations, law enforcement agencies throughout the nation are continuing to brutalize communities of color, as demonstrated by the June 12 and 18 shootings of Rayshard Brooks in Atlanta and Andres Guardado in Gardena, respectively. *See Atlanta Police Shooting: Rayshard Brooks Death Declared Homicide* (BBC NEWS, June 15, 2020), available at: https://www.bbc.com/news/world-us-canada-53047282; *LA County Sheriff's Deputies Shoot and Kill 18-Year-Old in*

27.     Upon the passing of George Floyd, residents of Minneapolis (where Mr. Floyd was murdered) took to the streets to denounce systemic racism and the history of violence which has targeted Black lives.  Although activists, scholars and community organizers have for decades demanded the defunding of the nation's militarized police forces and reinvestment into community initiates and services, calls to defund law enforcement have recently flooded popular discourse and gained new momentum.  Soon, hundreds of thousands of demonstrators across the country—in cities and towns large and small—joined Minneapolis in demanding immediate divestment and change, including the residents of Orange County.  Protests, as well as a fervent public conversation regarding such issues, are continuing.

28.     On June 3, 2020, when protests were at their most fevered pitch, Mayor Shea posted a status on her Profile which read:

> I received several email messages today from Black Lives Matter
> By the way, we have one Council candidate maybe more, supporting and promoting this movement ...
>
> I say this because I was asked today to cut funding for our Public Safety Dept and reallocate the money to community issues such as homelessness etc
>
> We have been named one of the Safest Cities in America for 15 years in a row and I will not agree to reduce our public safety funding especially after seeing the violence we have endured as a nation this past week, If you are coming into Irvine to promote an agenda, and protest for lesser public safety protection best you turn around and find another city to compromise.

_Gardena_ (LAIST, June 22, 2020), available at:
https://www.latimes.com/california/story/2020-06-25/deputy-andres-guardado-shooting-identified

12

CIVIL RIGHTS COMPLAINT

29.     As is apparent, the post generated a lively and heated discussion involving several hundred people—including the mayor—over the ensuing days.[6]  Many folks, such as plaintiff, criticized the mayor's response to calls for divestment from militarized policing and reinvestment in the most vulnerable communities of our society, whereas others supported the mayor's decision to not accept the demands of Black Lives Matter.

30.     Plaintiff, a Black man and Irvine constituent, responded the same day and criticized the mayor's official position and policy decision, stating: "Like other

---

[6] The screenshot of the mayor's June 3 post was taken by Plaintiff before he was blocked from the Profile.  That same day, the mayor also posted another status regarding the protests which read: "Right now we have a huge crowd of protesters at City Hall Signs with very rude comments people in the street blocking traffic…received a call a resident's car was hit trying to get home by protesters in the street blocking traffic and we are being asked to lessen public safety?"  This post generated more than 100 comments, was reshared several times and was liked by 67 people.  Plaintiff did not respond to this post, but other constituents referenced in this Complaint that did respond with criticism to the post were also blocked or had their comments deleted by the mayor.

CIVIL RIGHTS COMPLAINT

1  educated people have mentioned it's okay for you to support the movement and not

2  defund the police but you don't want to do either. I can hear the racist ancestors of

3  yours in this post and it's sickening. Enjoy your position while it last…"

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



CIVIL RIGHTS COMPLAINT

31.    Mayor Shea responded to some of her critics as evinced by the preceding and following screenshots.



32.    However, soon after plaintiff expressed his views within this public forum, the mayor responded by blocking plaintiff, thereby preventing him from being able to view or interact with the mayor's Profile, including the ability to participate in the conversation regarding the June 3 post or any other discussion thread.  Upon being blocked, plaintiff received the following message when attempting to access the mayor's Profile: "Sorry, this content isn't available right now. The link you followed may have expired, or the page may only be visible to an audience you're not in."  As of the filing of this lawsuit, plaintiff remains blocked from Mayor Shea's Facebook Profile, and is thereby unable to comment, contribute, or participate in any of the discussions and debates occurring within this forum.

33.    Plaintiff was not the only individual that was blocked or had their comment deleted by the mayor.  Upon information and belief, Ms. Jessica Ortega—whose critical comment may be seen above and to whom the mayor responded—was blocked by the mayor; Ms. Ladan Rashidi, after posting three comments on the mayor's profile wherein she criticized the mayor's response to the protests, had all of her comments deleted by the mayor and was subsequently blocked from the mayor's Profile; Ms. Nikka Aminmadani, who also submitted comments in response to the mayor's June 3 posts, was blocked by the mayor; and a Mr. Collin Pollum and his relative were blocked, like plaintiff, for criticizing the mayor's administration and

CIVIL RIGHTS COMPLAINT

response to the protests.  Tellingly, the mayor did not block users or delete comments that supported her position and policy.

34.    The mayor's unconstitutional conduct was met with wide-spread condemnation, with interest groups and advocates—including plaintiff—contacting the mayor to demand that she immediately unblock her critics and restore posts that she deleted as a result of viewpoint discrimination.[7]  The mayor's only response has been to delete her June 3 posts as well as other posts that generated extensive discussion, and include a disclaimer within the "info" box of her Profile informing the public that "this is not a government page".  These after-the-fact attempts at avoiding liability do not change the fact that the mayor's Profile was a public forum when plaintiff and others exercised their First Amendment rights by participating in the discussion on the Profile and remains so to this day.

35.    The mayor's actions clearly suppressed speech within a public forum and during a period of intense public controversy concerning use of force by law enforcement and systematic racism, which precluded plaintiff from being included or able to participate in a robust public debate.  Mayor Shea's conduct is particularly egregious where, amid a pandemic, social distancing guidelines have largely limited citizens' ability to engage with public officials and participate in public discourse to virtual settings, rather than in person.  At a minimum, the Mayor acted in reckless and callous disregard for plaintiff's rights.

---

[7] Noah Biesiada, *National First Amendment Advocates Condemn Irvine Mayor's Facebook Blocking Activity* (VOICE OF OC, June 11, 2020), available at: https://voiceofoc.org/2020/06/national-first-amendment-advocates-condemn-irvine-mayors-facebook-blocking-activity/
Ben Brazil, *Irvine Mayor Christina Shea under fire for comments criticizing Black Lives Matter protests* (LA TIMES, June 8, 2020), available at: https://www.latimes.com/socal/daily-pilot/entertainment/story/2020-06-08/irvine-mayor-christina-shea-under-fire-for-comments-criticizing-black-lives-matter-protests

16

CIVIL RIGHTS COMPLAINT

## FIRST CAUSE OF ACTION

**Violation of the First Amendment, 42 U.S.C. § 1983, and Cal. Const. Article 1, Section 2(a))**

**(Censorship in a Public Forum)**

36.    Plaintiff realleges and incorporates by this reference each of the foregoing paragraphs, as if fully set forth in this claim for relief.

37.    The Mayor Shea Facebook Profile constitutes a public forum under the United States and California Constitutions.

38.    At the time she banned plaintiff from her Facebook Profile, Mayor Shea was acting under color of state law.

39.    Mayor Shea's banning of plaintiff from her Facebook Profile was not content-neutral, nor narrowly tailored to serve important government interests, nor did it leave open ample alternative channels for communication.  For these and other reasons, the mayor's conduct infringed upon plaintiff's rights under the First Amendment to the United States Constitution and the California Constitution, Article I, Section 2(a), and 42 U.S.C 1983.

40.    Plaintiff has no clear and adequate remedy at law for this violation of his constitutional rights and has suffered irreparable injury as a result of defendant's conduct, which will continue unless and until enjoined by appropriate order of this court.  Plaintiff is also entitled to compensatory damages for the violation of his constitutional rights.

## SECOND CAUSE OF ACTION

**(Violation of the First Amendment, 42 U.S.C. § 1983, and Cal. Const. Article 1, Section 2(a))**

**(Viewpoint Discrimination)**

41.    Plaintiff realleges and incorporates by this reference each of the foregoing paragraphs, as if fully set forth in this claim for relief.

42.     Defendant blocked plaintiff from her Facebook Profile because of the viewpoints he expressed on that Profile in response to a post by defendant.  Mayor Shea's banning of plaintiff based on his viewpoints violated plaintiff's right to freedom of expression under the United States and California Constitutions, and 42 U.S.C. 1983.

43.     Plaintiff has no clear and adequate remedy at law for this violation of his constitutional rights and has suffered irreparable injury as a result of defendant's conduct, which will continue unless and until enjoined by appropriate order of this court.  Plaintiff is also entitled to compensatory damages for the violation of his constitutional rights.

## THIRD CAUSE OF ACTION
### (Declaratory & Injunctive Relief)

44.     Plaintiff realleges and incorporates by this reference each of the foregoing paragraphs, as if fully set forth in this claim for relief.

45.     There exists an actual, present, and justiciable controversy between plaintiff and defendant concerning plaintiff's right to participate in public debate by posting, responding, and commenting on the Mayor Shea Facebook Profile.

46.     Without intervention by this court, plaintiff, who wishes to participate in a public forum but has been denied access, has no adequate remedy at law to protect the future lawful exercise of his constitutional rights and will suffer irreparable harm, thereby entitling him to injunctive relief.

47.     This controversy is ripe for judicial decision, and declaratory relief is necessary and appropriate so that the parties may know the legal obligations that govern their present and future conduct.

## REQUEST FOR RELIEF

WHEREFORE, plaintiff respectfully prays for judgment as follows:

a) Declaring that by blocking plaintiff from the mayor's Facebook Profile, defendant has violated plaintiff's rights under the First Amendment of the

United States Constitution, 42 U.S.C. section 1983, and Article 1, Section 2(a) of the California Constitution;

b) Granting injunctive relief enjoining defendant from engaging in unlawful censorship against plaintiff and others similarly situated by blocking them on the Mayor Shea Facebook Profile based on the content or viewpoint of their posts;

c) Granting injunctive relief mandating that defendant "unblock" plaintiff from the Mayor Shea Facebook Profile, and enjoining defendant henceforth from blocking plaintiff or deleting his posts;

d) Awarding plaintiff compensatory damages;

e) Awarding plaintiff his reasonable attorney fees and costs; and

f) Granting any additional relief as may be just and proper.

Respectfully submitted,

Dated:  July 20, 2020        **BAUM HEDLUND ARISTEI & GOLDMAN, P.C.**

By:  /s/ Pedram Esfandiary
Pedram Esfandiary, Esq.
pesfandiary@baumhedlundlaw.com
Monique Alarcon, Esq.
malarcon@baumhedlundlaw.com
Timothy A. Loranger, Esq.
tloranger@baumhedlundlaw.com
**BAUM HEDLUND ARISTEI GOLDMAN, P.C.**
10940 Wilshire Boulevard, 17th Floor
Los Angeles, CA 90024
Telephone: (310) 207-3233

*Attorneys for Plaintiff*

CIVIL RIGHTS COMPLAINT