# EXHIBIT 18

# BAUM HEDLUND ARISTEI GOLDMAN PC
## CONSUMER ATTORNEYS

Washington, D.C. Office
2101 L Street, N.W.
Suite 800
Washington, D.C. 20037-1526
Office (202) 466-0513
Fax (202) 466-0527

10940 Wilshire Boulevard, 17th Floor
Los Angeles, CA 90024
Office (310) 207-3233
Fax (310) 820-7444
www.baumhedlundlaw.com

Philadelphia Office
1500 Market Street
12th Floor East Tower
Philadelphia, PA 19102-2100
Office (215) 665-5659
Fax (215) 569-8228

**VIA ELECTRONIC MAIL**

Christina Shea
1 Civic Center Plaza
Irvine, California 92606
christinashea@cityofirvine.org

Re:     **Blocking Members of the Public on Facebook**

Dear Mayor Shea,

  We are attorneys representing one of your constituents, Mr. Lamar West. It has come to our attention that you, in your capacity as Mayor, have "blocked" Facebook users, including Mr. West, from the Mayor's personal Facebook account after said citizens posted comments in response to a public post made by the Mayor relating, *inter alia*, to the recent protests sweeping across the country condemning the ongoing systematic police violence against communities of color.

  Specifically, on June 3, 2020, the Mayor posted a comment, reporting that the Mayor's Office had

> received several email messages today from Black Lives Matter… I was asked today to cut funding for our Public Safety Dept and reallocate the money to community issues such as homelessness etc… I will not agree to reduce our public safety funding especially after seeing the violence we have endured as a nation this past week, If you are coming into Irvine to promote an agenda, and protest for lesser public safety protection

  The post received some 161 comments was shared on 51 occasions the very day it was broadcast, with comments ranging from support to criticism of the Mayor's administration and the official Mayoral position on the protests. Specifically, Mr. West responded on the same day, commenting "[l]ike other educated people have mentioned it's okay for you to support the movement and not defund the police but you don't want to do either. I can hear the racist ancestors of yours in this post and it's sickening. Enjoy your position while it lasts…" Following Mr. West's explicit criticism of the Mayor's position and administration – in response to a public comment made by the Mayor – Mr. West was blocked from

posting further responses or viewing the conversation threads on the Mayor's profile that otherwise remained open to other members of the public.

Moreover, it appears that Mr. West is not the only individual that was blocked from the public forum after responding with a comment critical of the Mayor's official position and policy decision. On the same day of June 3, a Mr. Colin Pullum also submitted critical comments in response to the Mayor's post and, in one instance, admonished the practice of blocking "Black members of this community from your page." Mr. Pullum was also swiftly blocked, and so was a relative of his following similarly critical posts. And, a Ms. Jessica Ortega is reported to have had one of her comments deleted from the Mayor's Facebook page after posting responses such as: "How did you even get elected, you can't even write a FB post…" (a comment to which the Mayor responded).

Such restrictions upon public speech – responding to posts made by the Mayor in a public forum pertaining to official Mayoral activity and views – amount to clear violations of the First Amendment rights of those subject to the block, including Mr. West. Under long-established First Amendment law, governmental entities are "strictly limited" in their ability to regulate private speech in public fora. *Pleasant Grove City, Utah v. Summum,* 555 U.S. 460, 469 (2009). "Opening an instrumentality of communication 'for indiscriminate use by the general public' creates a public forum." *Cornelius v. NAACP Legal Def. & Educ. Fund*, Inc., 473 U.S. 788, 802 (1985). And, "Congress [has] recognized the internet and interactive computer services as offering 'a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity.'" *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) (quoting 47 U.S.C. § 230(a)(3)). Indeed, the Supreme Court recently analogized social media sites, like the Mayor's Facebook page to "traditional" public forums, characterizing the internet as "the most important place[] (in a spatial sense) for the exchange of views." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1743 (2017).

The Mayor's "personal" Facebook page, which is open to the public and on which the Mayor has posted comments in official capacity, and in response to which Facebook users – regardless of whether they have "befriended" the Mayor on the site – may post comments, constitutes, for all intents and purposes, a designated public forum. *See Knight First Amend. Inst. at Colum. Univ. v. Trump*, 302 F. Supp. 3d 541, 573 (S.D.N.Y. 2018) (holding that the ***interactive component*** of the President's Twitter account, as opposed to the President's tweets themselves, constituted a designated public forum). Akin to *Knight*, it is the interactive component of the Mayor's Facebook page – upon which individuals such as Mr. West may post comments and share opinions – that qualifies the page as a designated public forum within which speech may not be restricted.

Moreover, the fact that the comments by Mr. West and the public were posted on the Mayor's "personal" Facebook page – and had their speech restricted therein – as opposed to the Mayor's "official" page is immaterial. Courts within the Ninth Circuit and around the country have routinely recognized that

unlawful state regulation of free speech occurs when the "posts [are] linked to events which arose out of [the state actor's] official status…" *Faison v. Jones*, No. 219CV00182TLNKJN, 2020 WL 869122, at *6 (E.D. Cal. Feb. 21, 2020) (citing *Garnier v. Poway Unified Sch. Dist.*, No. 17-CV-2215-W (JLB), 2019 WL 4736208, at *7 (S.D. Cal. Sept. 26, 2019) ("[t]he content of [the defendants'] posts, considered in totality…bore a sufficiently close nexus with the state."); *see also Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019), *as amended* (Jan. 9, 2019). Here, the post to which Mr. West and others responded was linked to events which arose out of the Mayor's official business, such as the fact that the Mayor declined to cut police funding to "reallocate the money to community issues", and warned citizens wishing to protest in Irvine to "turn around and find another city to compromise." The post bears a sufficiently close nexus to the Mayor's office because it explicitly articulates an official policy decision vis-à-vis police funding and the opposition to citizens exercising their First Amendment right of assembly, all matters of public concern. As the Second Circuit reasoned in *Knight*, President Trump acted in a governmental capacity, not as a private citizen, in blocking users because they criticized him and/or his policies. 928 F.3d at 234-236. "The court noted that the Twitter account bore 'all the trapping of an official state-run account' because the President used his official title on the account and posted photographs of himself engaged in official duties, such as signing executive orders and delivering remarks." *Faison*, 2020 WL 869122, at *5 (quoting *Knight*, 928 F.3d at 231). The same applies here given that the Mayor announced official policy on her Facebook page and, like Mr. Trump, posted photographs of herself "engaged in official duties", such as presiding at City Council meetings, meeting with constituents, and conducting community outreach work within in official capacity. Furthermore, it appears that the Mayor's "personal" page was updated far more frequently during the climax of the protests – repeatedly inviting the public to post responses and engage in dialogue – than the "official" page.

Accordingly, blocking users from interacting with the Mayor's Facebook profile (which is otherwise kept open for public comment and viewing) merely because the Mayor disagrees with their stated positions on recent social and political events – as well as the policies of the Mayor's administration – amounts to a clear instance of "viewpoint discrimination" which "is prohibited in all forums." *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679 (1992); *see also Knight*, 928 F.3d at 236, 238 ("Once it is established that the President is a government actor with respect to his [Twitter a]ccount, viewpoint discrimination violates the First Amendment... once he opens up the interactive features of his account to the public at large he is not entitled to censor selected users because they express views with which he disagrees."). "Viewpoint discrimination is apparent... if a government official's decision to take a challenged action was 'impermissibly motivated by a desire to suppress a particular point of view.'" *Davison*, 912 F.3d at 687 (quoting *Cornelius*, 473 U.S. at 812–13) ("That [the defendants'] action targeted comments critical of the School Board members' official actions and fitness for office renders the banning all the more problematic as such speech 'occupies the core of

BAUM HEDLUND ARISTEI GOLDMAN PC
CONSUMER ATTORNEYS

Page 4
June 11, 2020

the protection afforded by the First Amendment.'"). Here, it is evident that the underlying motive for blocking users from the Mayor's account stems from a political disagreement pertaining to the propriety, purpose and demands of the recent protests – a matter of public concern – as well as criticisms of the Mayor's official actions in response to the protests and calls for reallocating public funds. *See Faison*, 2020 WL 869122 at *7 ("It is undisputed that any unbanned Facebook user is able to comment on Defendant's posts without limitation…In other words, members of the public are free to comment on Defendant's posts until Defendant chooses to ban them. Further, members of the public did post about matters of public concern — oftentimes in response to Defendant's own posts about Sheriff's Department issues — and Defendant repeatedly replied to those discussions."). Viewpoint discrimination in this context is underscored by the fact that users who responded favorably to the Mayor's post and/or endorsed the Mayoral administration were not blocked and did not have their posts deleted. *See Davison*, 912 F.3d at 688 ("That Randall's action targeted comments critical of the School Board members' **official actions and fitness for office** renders the banning all the more problematic as such speech 'occupies the core of the protection afforded by the First Amendment.'" (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995) (emphasis added).

The circumstances of the Mayor blocking users and deleting posts within a public forum merely because the discourse does not accord with the Mayor's ideological disposition is a textbook example of unlawful state restriction of public speech. We respectfully request that you immediately unblock Mr. West and others that have been blocked because they expressed criticism in response to the Mayor's public post and abstain from blocking users or deleting posts in response to comments made in the public forum of the Mayor's Facebook page.

Thank you for considering this request.

Sincerely,

By: /s/ Pedram Esfandiary
Pedram Esfandiary, Esq.
pesfandiary@baumhedlundlaw.com
Monique Alarcon, Esq.
malarcon@baumhedlundlaw.com
BAUM, HEDLUND, ARISTEI, & GOLDMAN, P.C.
10940 Wilshire Boulevard, 17th Floor
Los Angeles, CA 90024
Telephone: (310) 207-3233