FILED
CLERK, U.S. DISTRICT COURT
11/12/2020
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CW___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| LAMAR WEST,<br><br>    Plaintiff,<br><br>    v.<br><br>CHRISTINA SHEA,<br><br>    Defendant. | Case No.: SACV 20-01293-CJC (DFMx)<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [Dkt. 32] |

## I.    INTRODUCTION & BACKGROUND

This case concerns Plaintiff Lamar West's access to a Facebook profile of Defendant Christina Shea, the mayor of Irvine. (Dkt. 31 [FAC, hereinafter "FAC"] ¶¶ 1, 12, 13.) Plaintiff is a software engineer who lives in Irvine. (*Id.* ¶ 12.) Defendant has three Facebook platforms: (1) a profile in her capacity as mayor (the "Mayor Profile"), (2) a page[1] titled "Christina Shea, Irvine City Mayor" (the "Page"), and (3) the profile that is the subject of this case, which has some indications of being personal and some

---

[1] In contrast to a "profile," a Facebook "page" provides a platform for "[b]usinesses, organizations and public figures" to "connect with their customers or fans." (FAC ¶¶ 15–16.)

-1-

indications of being official (the "Profile").  (*Id.* ¶ 22.)  Before and for a short time after Plaintiff filed this case, Defendant's Profile was accessible by the public, such that even those who were not Defendant's "friends" on Facebook could see the content and comment on it.  (*Id.* ¶ 3.)  Plaintiff alleges that during this time, Defendant used her Profile for official business, including to disseminate information regarding her mayoral activities, to share her official position on social and political issues, and to communicate with constituents.  (*Id.* ¶¶ 3, 22–27.)  The Profile had by far the largest audience of Defendant's platforms, with 1,750 followers and 5,000 friends, in contrast to the Page's 431 followers and the Mayor Profile's 21 friends.  (*Id.* ¶ 23.)

On June 3, 2020, soon after the death of George Floyd and the ensuing national protests, Mayor Shea posted this status on her Profile:



(*Id.* ¶ 32.)  Plaintiff was one of more than 100 people who commented on the post.  He wrote:

//



(*Id.* ¶¶ 33–34.)  Though Defendant did not respond to Plaintiff's comment, she did respond to some of the negative comments on the post:



(*Id.* ¶ 35.)

After Plaintiff "challenged the mayor's official position on the recent nationwide protests against police oppression of communities of color," Defendant "blocked" Plaintiff from her Profile, thereby preventing him "from viewing, commenting, posting, or otherwise contributing to the profile, and . . . exclud[ing him] from participation in the online dialogue or debate."  (*Id.* ¶¶ 1, 20, 36.)  Plaintiff alleges that Defendant also blocked at least 4 other people after they posted critical comments on Defendant's Profile.  (*Id.* ¶ 37.)  Plaintiff and others contacted Defendant and "demand[ed] that she immediately unblock her critics and restore posts that she deleted as a result of viewpoint discrimination."  (*Id.* ¶ 38.)  Defendant did not do so.  Instead, she deleted the June 3, 2020 post and others, and added a statement in the "info" box of her Profile stating, "this is not a government page."  (*Id.*)

On July 20, 2020, Plaintiff filed this case, alleging that Defendant's Profile is a public forum, and that Defendant committed censorship and viewpoint discrimination in violation of the First Amendment to the United States Constitution, and also in violation of California's Constitution.  (*See* Dkt. 1 [Complaint] ¶¶ 3, 20.)  On July 26, 2020—four days after Plaintiff filed a Motion for a Preliminary Injunction—Defendant "restricted her [Profile] entirely, such that her posts are now only accessible to her Facebook 'friends.'"  (FAC ¶ 42.)  Plaintiff now seeks relief only for the alleged constitutional violations that occurred while Defendant's Profile was open to the public.  (*Id.* ¶ 43.)  Before the Court is Defendant's motion to dismiss Plaintiff's FAC.  For the following reasons, Defendant's motion is **DENIED**.[2]

## II.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's claims.  The issue on a motion to dismiss for failure to state a claim is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012).  To survive a motion to dismiss, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[2] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for November 16, 2020 at 1:30 p.m. is hereby vacated and off calendar.

## III. DISCUSSION

Defendant argues that the Court should dismiss Plaintiff's claims under both the United States Constitution and the California Constitution.

### A. Plaintiff's First Amendment Claim

Defendant argues that Plaintiff's claim under 42 U.S.C. § 1983 for violation of the First Amendment should be dismissed because (1) the Profile was not a public forum, (2) Defendant was not acting under color of state law when she blocked Plaintiff, (3) Defendant is entitled to qualified immunity for her actions, and (4) Defendant is entitled to immunity under the Communications Decency Act.

#### 1. Public Forum

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. Amend. I. There is "practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs" and "public issues" through the "exposition" of political opinions. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995). The extent to which the government may limit speech depends on the nature of the relevant forum. *Eagle Point Educ. Ass'n/SOBC/OEA v. Jackson Cty. Sch. Dist. No. 9*, 880 F.3d 1097, 1105 (9th Cir. 2018). Generally, the more public the forum, the less power the government has to restrict speech.

Defendant first argues that Plaintiff's FAC should be dismissed because her Profile was not a public forum. (Mot. at 7–11.) She points out that her posts on the Profile include photos of herself with her grandchildren and dogs, that she refers to herself as a

realtor, and that there is no link to the Irvine website or social media. (*Id*. at 8–9.) At this stage, the Court is not persuaded. Plaintiff alleges sufficient facts to make it plausible that Defendant's Profile was a public forum. He alleges the Profile was, for a time, accessible by the public such that anyone could comment on Defendant's posts, and that Defendant used the Profile—which had 1,750 followers and 5,000 friends—for official business, including to disseminate information regarding her mayoral activities, share her official position on social and political issues, and communicate with constituents. (FAC ¶¶ 3, 22–27); *see Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 237 (2d Cir. 2019) (concluding that the President made his ostensibly personal Twitter account a public forum because it "was intentionally opened for public discussion when the President, upon assuming office, repeatedly used the Account as an official vehicle for governance and made its interactive features accessible to the public without limitation"). Plaintiff further alleges that Defendant's Page and Mayor Profile had far fewer followers and friends than the Profile. (FAC ¶ 23.) A reasonable inference from these allegations is that Defendant used the Profile for her official business, even though she also had other ways of reaching her constituents on Facebook.

Moreover, even if Defendant's Profile were a non-public forum, as Defendant argues, Plaintiff has sufficiently alleged that his expression was suppressed merely because Defendant disagreed with his view. (FAC ¶¶ 1, 36–37.) Even in non-public forums, governmental restrictions on speech must be both reasonable and "not an effort to suppress expression merely because public officials oppose the speaker's view." *Eagle Point Educ. Ass'n*, 880 F.3d at 1105; *see Knight First Amendment Inst.* ("If the Account is a forum—public or otherwise—viewpoint discrimination is not permitted by the government."); *Davison v. Randall*, 912 F.3d 666, 680 (4th Cir. 2019), *as amended* (Jan. 9, 2019) (affirming conclusion on summary judgment that Chair of the County Board of Supervisor's Facebook Page amounted to a public forum, and explaining that it need not determine what type of public forum the page was because the

Chair banning the Plaintiff from the page constituted viewpoint discrimination, which is prohibited in all forums); *Leuthy v. LePage*, 2018 WL 4134628, at *14 (D. Me. Aug. 29, 2018), *motion to certify appeal denied,* 2018 WL 4955194 (D. Me. Oct. 12, 2018) (denying motion to dismiss and explaining that "whether the Facebook page is a public forum, a designated public forum, or a non-public forum, viewpoint discrimination is not permissible").

### 2. Under Color of State Law

Defendant next argues that Plaintiff's First Amendment claim should be dismissed because she was not acting under color of state law when she blocked Plaintiff from her Profile. (Mot. at 14–15.) To state a claim under § 1983, a plaintiff must (1) allege the violation of a right secured by the Constitution and laws of the United States, and (2) show that the alleged deprivation was committed by a person acting under color of state law. *Naffe v. Frey*, 789 F.3d 1030, 1035–36 (9th Cir. 2015). A person acts under color of state law when she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* This test is generally satisfied when a state employee wrongs someone "while acting in his official capacity." *Id.* Determining whether a person acted under color of state law often involves "sifting facts and weighing circumstances." *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961).

Plaintiff has sufficiently alleged that Defendant was acting in her official capacity when she blocked Plaintiff from her Profile to survive dismissal. Plaintiff not only alleges that Defendant was acting under color of state law (FAC ¶¶ 13, 46), but he also includes multiple examples of posts where Defendant described actions she took as mayor, including ordinances she co-authored, ceremonies she officiated, and meetings she attended. (*See, e.g.*, FAC ¶¶ 3, 22–28.) The FAC also includes examples of

Defendant using her Profile to interact directly with constituents.  (*See, e.g.*, *id.* ¶¶ 34–35.)  Other courts have considered factors like these important in finding state action with regard to social media profiles.  *See, e.g.*, *Davison*, 912 F.3d at 680 (agreeing with the district court's conclusion on summary judgment that Chair of County Board of Supervisors acted under color of state law in administering Facebook Page where she used it "to inform the public about serious public safety events and to keep her constituents abreast of the County's response to a snowstorm and to coordinate snow removal activities"); *See Attwood v. Clemons*, 818 F. App'x 863, 867 (11th Cir. 2020) (reasoning that allegations were sufficient to indicate that state legislator was "acting in his official capacity when he operate[d] these social media accounts as an extension of his role in state office"); *Leuthy*, 2018 WL 4134628, at *8 ("The Plaintiffs pleaded facts that lead to a reasonable inference the Governor acted under color of state law when he deleted their posts and banned them from his Facebook page.").

### 3.     **Qualified Immunity**

Finally, Defendant argues that Plaintiff's FAC should be dismissed because she is entitled to qualified immunity.  (Mot. at 18–23.)  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments" and protects "'all but the plainly incompetent or those who knowingly violate the law.'"  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "[C]learly established law should not be defined at a high level of generality," but "must be particularized to the facts of the case."  *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotations and citations omitted).

At this early stage, the Court cannot conclude that qualified immunity applies. The Supreme Court has repeatedly cautioned that "the clearly established right must be defined with specificity," and that courts must "not [ ] define clearly established law at a high level of generality." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019). However, even following this guidance, the Court is not persuaded that qualified immunity is appropriate here at this early stage. Indeed, at the motion to dismiss stage, the Court accepts the allegations of the complaint as true when determining qualified immunity. *Henshaw v. Daugherty*, 125 Fed. App'x 175, 176 (9th Cir. 2005).

Plaintiff plausibly alleges that Defendant blocked him from her Profile solely because he expressed a view she did not like. Governmental viewpoint discrimination has long been prohibited by the First Amendment. Indeed, the Supreme Court has stated that "[i]t is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector and Visitors,* 515 U.S. 819, 827–29 (1995). This means that the impermissibility of viewpoint discrimination is "a self-evident or universally recognized truth." *Metro Display Advert., Inc. v. City of Victorville*, 143 F.3d 1191, 1196 (9th Cir. 1998). Defendant is therefore not entitled to qualified immunity at this stage. *See O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (concluding 12(b)(6) dismissal was inappropriate in First Amendment retaliation case, concluding that the "constitutional right to be free from retaliation" was clearly established). Of course, the "denial of qualified immunity at this stage of the proceedings does not mean that this case must go to trial." *Keates v. Koile*, 883 F.3d 1228, 1240 (9th Cir. 2018). Rather, Defendant may move for summary judgment based on qualified immunity once an evidentiary record has been developed. *Id.*

//

//

//
...
...

### 4. CDA Immunity

The Communications Decency Act of 1996 (the "CDA") "provides internet companies with immunity from certain claims in furtherance of its stated policy 'to promote the continued development of the Internet and other interactive computer services.'" *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 681 (9th Cir. 2019) (citing 47 U.S.C. § 230(b)(1)). Under the heading "[p]rotection for 'Good Samaritan' blocking and screening of offensive material," Section 230(c) of the CDA provides that "[n]o provider or user of an interactive computer service shall be held liable on account of . . . any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected." 47 U.S.C. § 230(c)(2)(A). Through this section, "Congress intended to spare interactive computer services the grim choice between voluntarily filtering content and being subject to liability on the one hand, and ignoring all problematic posts altogether to escape liability." *HomeAway.com*, 918 F.3d at 684.

Defendant argues that the CDA immunizes her from damages "because she had a good faith belief that Plaintiff's posts were harassing and 'otherwise objectionable,'" since "Plaintiff called the mayor and her ancestors racists, then further ominously threatened that she should 'Enjoy your position while it last[s].'" (Mot. at 24 [citing FAC ¶ 34].) But accepting Plaintiff's allegations as true, as the Court must at this stage, Defendant intentionally blocked Plaintiff from a Profile where she interacted with her constituents as mayor solely because Plaintiff expressed a viewpoint she disagreed with. To grant Defendant's motion to dismiss based on CDA immunity, then, the Court would have to believe that Congress intended CDA immunity to immunize viewpoint discrimination. The Court is not so persuaded.

### B. Plaintiff's Claim for Violation of the California Constitution

Finally, Defendant contends that Plaintiff may not seek damages under the California Constitution, citing *DeGrassi v. Cook*, 29 Cal. 4th 333, 335 (Cal. 2002). (Mot. at 25.) In that case, the California Supreme Court explained that in general, actions for damages for violation of the California Constitution's free speech guarantee are not available. However, the court expressly stated that its ruling did "not mean that the free speech clause, in general, never will support an action for money damages." *Id.* at 344. And an integral part of the court's reasoning was that the "plaintiff had meaningful alternative remedies" including an injunction. *Id.* at 342. Here, an injunction cannot redress the injury Plaintiff alleges. Again, the Court concludes that it is not appropriate to dismiss Plaintiff's claim at this early stage.

## IV. CONCLUSION

The evidence may show that, for one reason or another, Defendant is not liable for blocking Plaintiff from her Profile. But at this early stage, dismissal is not appropriate on any of the grounds Defendant advances. For the foregoing reasons, Defendant's motion to dismiss is **DENIED.** Defendant shall file an answer to the FAC by November 25, 2020.

DATED: November 12, 2020

HON. CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE